IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

AARON LOOPER                                                                                    PLAINTIFF

v.                                    Civil No.: 6:10-cv-06037

SHERIFF LARRY SANDERS *et al.*                                                    DEFENDANTS

**O R D E R**

  Aaron Looper, a resident of Bismarck, Arkansas, and former inmate of the Garland County Detention Center, filed this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636, this case is before the undersigned upon consent of the parties. ECF No. 16.

**I.     Background**

  As this case is before the Court on Defendants' Motion for Summary Judgment, the Court will recite the facts pled by the non-moving party, the Plaintiff. Plaintiff has brought this action against the Defendants in both their official and individual capacities. ECF No. 25, ¶ 1.

  Plaintiff alleges he was subjected to unconstitutional conditions of confinement while housed in the Garland County Detention Center. Specifically, Plaintiff states he only had access to drinking water during meal times. ECF No. 1, ¶ V. Further, he was subject to a "potential health issue" due to the sinks where he washed his hands not having hot, or even warm, water. *Id.* He alleges his toilet leaked sewage when other toilets were flushed and toilets could only be flushed if buckets of water were poured into them. *Id.* Plaintiff's cell had padlocks on the doors because the electronic lock system did not work and safety issues arose. *Id.* Some inmates had to sleep on "ez bunks" on the floor due to overcrowding, and this caused a lack of floor space to walk around at night. *Id.* Overcrowding is also alleged to have caused him to sit on the floor to eat some of his meals. ECF No. 1, ¶ V.

Sinks in the facility would not turn off and continually ran water, and there were no TB lights at the facility. *Id.* Further, inmates only received clean uniforms every few weeks, and there were staph outbreaks at the facility. *Id.* Plaintiff complains there was mold in the shower and bathroom area, mats were not sanitized, and there was a shortage of sheets at the facility. *Id.* He alleges he was provided with neither boxers (underwear) or socks, nor enough soap or toothpaste. *Id.* Finally, Plaintiff contends that it sometimes took as long as fifteen (15) minutes to get a guard's attention at night if an inmate had an emergency situation. ECF No. 1, ¶ V.

## II.     Applicable Law

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    Discussion

### i.     Official Claims

Plaintiff has sued Defendants in their individual and official capacities. ECF No. 25, ¶ 1. Plaintiff's official capacity claims are tantamount to suing Garland County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Because *Monell*

specifically rejected liability based solely on *respondeat superior*, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.* Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels ." *Monell*, 436 U.S. at 690-91.

In his Response to the Motion for Summary Judgment, ECF No. 25, Plaintiff states the custom or policy leading to the violation of his constitutional rights was "refusing me access to running drinking water and a usable toilet" which is "against jail standards" and the "county's policy." *Id.*, ¶ 1.

Plaintiff cannot sustain his Section 1983 claim against Garland County with just his vague and conclusory allegations that the County had unconstitutional policies. To withstand the Defendants' Motion for Summary Judgment, he must show some specific deficiency in the County's policies, which evidences a deliberate disregard for the constitutional rights of inmates. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2nd Cir. 1993) ("mere assertion . . . that a municipality has such a custom or policy [that purportedly caused a violation of the plaintiff's constitutional rights] is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"). In this case, Plaintiff has not shown, or even alleged, any specific policy related to drinking water or toilet facilities which would cause a constitutional deprivation, or could be said to show deliberate disregard for the rights of inmates.

Plaintiff actually makes his allegation in the negative – he suggests there was a constitutional

policy, but that policy was violated. Such a claim is not actionable. *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (no § 1983 liability for violation of prison policy).

To the extent Plaintiff is seeking injunctive relief, when a prisoner is no longer subjected to an allegedly unconstitutional or unlawful course of action, the prisoner's claims for declaratory and injunctive relief are moot. *Pratt v. Corr. Corp. of Am.*, 267 Fed. Appx. 482, 2008 WL 612571, *1 (8th Cir. 2008) (table decision) (concluding inmate's 1983 claims for declaratory and injunctive relief were moot when he was transferred to another facility and was no longer subject to alleged unlawful conditions); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (section 1983 claims for declaratory and injunctive relief are moot when plaintiff is no longer subject to alleged unlawful conditions). Accordingly, Plaintiff's claims for injunctive relief are now moot because he is no longer incarcerated in the Garland County Detention Center.

    **ii.**    <u>**Individual Capacity Claims**</u>

        i.    **Defendants Sanders, Steed and Dorris**

In order to state a claim for relief under § 1983, one must allege that a person acting under the color of state law deprived the plaintiff of a constitutional right. *Griffin-El v. MCI Telecommunications Corp., et al.*, 835 F. Supp. 1114, 1118 (E.D. Mo.1993). However, Plaintiff's allegations against Defendants Sanders and Steed are based on their supervisory positions only, and as noted above, there is no *respondeat superior* liability under § 1983. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir.1995). Plaintiff alleges Defendant Sanders is responsible for "allowing his deputies to run a jail in that condition," while Defendant Steed is responsible for "allowing his deputies to run the jail in his name." Plaintiff does not allege any personal knowledge, action or inaction on behalf of either Sanders and Steed.

Similarly, regarding Defendant Dorris, he is simply alleged to be "the most uncaring of all the deputies." Plaintiff has not alleged any personal involvement of Defendant Dorris. Plaintiff's claims against defendants Sanders, Steed and Dorris are dismissed.

### ii. Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. CONST. AMEND. VIII. *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (deliberate indifference standard of the Eighth Amendment applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)( *citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation

marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.* at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case, and will discuss each in turn.

### a. **Access to Drinking Water**

Plaintiff has alleged he was only given drinking water at meal times. Plaintiff describes this amount as "a small cup of water" given three times a day and states it is "not enough" to keep a person of his size "hydrated to an efficient level." However, Plaintiff has presented no evidence that he actually suffered dehydration or any other ill effects from the lack of drinking water. *See, Apodaca v. Sanders*, 2010 WL 996399 (W.D. Ark. 2010).

Additionally, Plaintiff states there were sinks which ran continuously in the jail, to which he had access. Plaintiff has not stated why he could not have used those sinks for drinking water. Plaintiff has not claimed that the continually running sinks provided water that was dirty, caused him to be ill, or that it even tasted bad. It appears Plaintiff is merely complaining because the water available to him, save at meal times, came out of a sink rather than a fountain or other source designated only for drinking water. Such allegations are not sufficient to state a constitutional claim. *Brazell v. Robinson*, 2009 WL 1392577 (E.D. Ark. 2009).

### b. **Hot or Warm Water**

Plaintiff also alleges there was no hot, or even warm, water available in the sinks when he would wash his hands, creating a potential health issue. Plaintiff states he developed boils and staph

infections due to "improper" hygiene, such as the lack of hot water. Basic personal hygiene requires the availability of hot running water, and for this reason, several courts have condemned the absence of hot water as violative of the eighth amendment. *See Cody v. Hillard*, 599 F. Supp. 1025 (D.C. S.C. 1984); *Grubbs v. Bradley*, 552 F. Supp. 1052, 1100, 1126, 1132 (D.C. Tenn. 1982); *French v. Owens*, 538 F. Supp. 910, 925, 926 (D.C. Ind. 1982); *Lightfoot v. Walker*, 486 F. Supp. 504, 510, 525, 528 (S.D. Ill.1980); *Ramos v. Lamm*, 485 F. Supp. 122, 135, 155 (D.C. Colo. 1979); *Battle v. Anderson*, 447 F. Supp. 516, 523, 524-25 (E.D. Okla.), aff'd, 564 F.2d 388 (10th Cir. 1977); *Palmigiano v. Garrahy*, 443 F. Supp. 956, 961, 979, 987 (D.C. R.I. 1977); *Pugh v. Locke*, 406 F. Supp. 318, 323, 332 (D.C. Ala. 1976).

        c.     **Unusable Toilets**

Plaintiff maintains he was left in a cell for ten and a half months where the toilet was leaking raw sewage on the floor and would not flush. He asserts that buckets of water were brought in to flush the toilet but only once a day. On one occasion he slipped and fell on water in the cell. On other occasions, Plaintiff maintains he became physically ill as a result of the exposure to raw sewage.

In *Smith v. Copeland*, 87 F.3d 265 (8th Cir.1996) the Eighth Circuit noted that not every "overflowed toilet in a prison amounts to a constitutional violation." *Id.* at 268. The court noted it had found constitutional violations to exist when inmates were forced to work without protective gear in "a shower of human excrement," and had ordered prisons to provide protective gear and to warn of the dangers of working in AIDS-contaminated waste. *Id.* at 269. It had also found a constitutional violation to exist when "an inmate was forced to endure a cell covered with filth and human waste for two full years." *Id.* The Eighth Circuit noted that "the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis." *Id.* It noted that "[c]onditions such

as a filthy cell that "may be tolerable for a few days are intolerably cruel for weeks or months." *Id.*

In the case before it, viewed in the light most favorable to the plaintiff, the summary judgment materials showed the plaintiff was subjected to a "overflowed toilet in his cell for four days." *Smith*, 87 F.3d at 269. Under the totality of the circumstances, the court held the defendants entitled to judgment as a matter of law on the raw sewage claim. *Id.*

Under the totality of the circumstances in the case at bar, I believe Plaintiffs' allegations rise to the level of constitutional significance. Taking the facts in the light most favorable to Plaintiff, he was exposed to the toilet leaking raw sewage for over ten (10) months. I find genuine issues of fact as to whether Defendants were deliberately indifferent to the risk of harm to Plaintiff posed by the leaking toilet that would not flush.

With respect to the submission of grievances, Plaintiff asserts that he submitted several grievances regarding the conditions in his cell, but never received them back. His summary judgment response is sworn to under penalty of perjury. A written statement under penalty of perjury is the equivalent of an affidavit for summary judgment purposes. *See e.g., DeMars v. O'Flynn*, 287 F. Supp. 2d 230, 242 (W.D. N.Y. 2003) (citations omitted). Therefore, I find a genuine issue of fact exists regarding whether Plaintiff exhausted his administrative remedies.

        d.    **Padlocks on Doors**

Plaintiff contends the electronic locks at Garland County did not work while he was incarcerated there, and padlocks were used on the doors, instead. He maintains the use of the padlocks caused him to "remain locked up several days consecutive due to them not having time to unlock" the inmates. ECF No. 25, ¶ 5(a). While there was no fire or other emergency which caused him to need to leave his cell quickly, there was a tornado drill. Plaintiff stated the drill "caused

problems by showing that if we were in [an] actual[] emergency they could not get us out safely." *Id.*, ¶5(b).

Plaintiff has failed to establish that he suffered any harm related to the padlocks on the doors. To prevail on a condition-of-confinement claim, inmates and pretrial detainees must show: (1) the condition was serious enough to deprive them of the minimal civilized measure of life's necessities, or to constitute a substantial risk of serious harm, and (2) officials were deliberately indifferent to the inmates' or detainees' health and safety. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir.1996); *Frye v. Pettis County Sheriff Dept.*, 41 Fed. Appx. 906 (8th Cir.2002)(unpub. per curiam). The Plaintiff has not shown that he was deprived of the minimal civilized measure of life's necessities, or exposed to a substantial risk or harm, or that any officials were deliberately indifferent to his health and safety. Although Plaintiff states he would not have been able to be removed from the Detention Center safely in the event of an emergency, Plaintiff offers no evidence of how he would not be able to be removed safely, or how much longer it would take him to be removed with the padlock system versus the electronic entry or other entry systems. Thus, Plaintiff has not established a substantial risk of serious harm from the padlock door system.

     e.  **Continually Running Water**

Plaintiff maintains some of the sinks in the jail would not turn off and continually ran water and these sinks were located three to eight feet from him, depending on the specific sink at issue. Plaintiff was harmed by slipping and falling from the overflow of the sinks. However, "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishments." *Le Maire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). Further, due to stepping around water, there was animosity between the inmates because inmates would get into one another's space. Plaintiff does

not state he was ever harmed by the alleged "animosity" between the inmates, nor does he state that he was even threatened by other inmates. Therefore, Plaintiff has failed to make a conditions of confinement claim regarding the continually flowing water in the sinks.

    f.  **Lack of TB Lights**

Plaintiff has alleged there were no TB lights in the Garland County facility. However, Plaintiff did not contract TB from the Garland County Detention Center, although he believes he had daily contact with inmates who were TB-positive. Plaintiff suffered no harm from the lack of TB lights in the facility, stating that it was a "health concern" that is addressed by state and federal regulations. ECF No. 25, 9(c).

With respect to plaintiff's allegations concerning defendant's failure to maintain TB lights, these also fail to state a claim of denial of minimal civilized measure of life's necessities. *Smith v. Gibson*, 2008 WL 717590, *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Finally, Plaintiff has provided no proof of actual injury. Plaintiff does not allege he suffers from TB and is in need of the lights for his treatment or that he contracted TB due to the lack of TB lights.

    g.  **Adequate Clothing**

Plaintiff makes two separate claims regarding adequate clothing 1) that he was not issued a clean uniform except once every two weeks, and 2) that he was not provided with boxers (underwear) or socks.

Regarding Plaintiff's uniform claims, he maintains that uniforms were not cleaned on a routine schedule. At times, Plaintiff's uniform was cleaned once a week, but at times, he could go up to a month without a clean uniform. Plaintiff stated he had staph infections as a result of being forced to wear these unclean uniforms.

Plaintiff also states that he was not provided with socks or boxers, although he did acquire these items from other inmates and from a friend who appears to reside outside the jail. Plaintiff states he was harmed by contracting "athletes foot" due to no socks and by his "pubic areas" touching unsanitary clothes, due to no underwear being provided.

However, Plaintiff has failed to show how any of the named defendants played any part in determining whether he was issued underwear, socks, or provided clean uniforms. *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ( "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations omitted); *Clark v. Long*, 255 F.3d 555, 559 (8th Cir. 2001) (plaintiff must prove that the defendant's unconstitutional action was the "cause in fact" of his injury to establish a violation of constitutional rights under § 1983); *Tilson v. Forest City Police Dep't*, 28 F.3d 802, 807 n.9 (8th Cir.1994) (there can be no § 1983 relief without proof of causation).

### h.   **Mold**

Plaintiff further maintains there was black mold around the shower and toilets, which led to labored breathing and infections of Plaintiff's ear, throat, and mouth. Plaintiff was unable to obtain cleaning supplies to clean these areas, according to his response to the Motion for Summary Judgment, although limited bleach was available at times, according to his Complaint. However, as noted above, Plaintiff has failed to identify any of the named Defendants responsible for the mold or lack of cleaning supplies. *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir.2001) (plaintiff failed to allege sufficient personal involvement by any defendant to support a claim).

### i.   **Lack of Mat Sanitation**

Plaintiff has alleged that the mats were not sanitized in the Garland County jail, leading to bed

bugs and a higher risk of staph infections. Plaintiff has not alleged that he was given one of these mats, or that he personally suffered any harm from utilizing the mat. *See Kellensworth v. Norris*, 221 F.3d 1342 (8th Cir. 2000) (unpub. per curiam) (no allegation or suggestion of physical injury arising from temporary housing with an inmate feared by the plaintiff); *Smith v. Spath*, 187 F.3d 643 (8th Cir. 1999) (unpub. per curiam) (no injury other than emotional distress from delay in correcting clerical error in sentencing order); *Smith v. Moody*, 175 F.3d 1025 (8th Cir. 1999) (unpub. table op.) (no allegation of physical injury).

### j. Lack of Adequate Sheets

Plaintiff has alleged that Garland County had a shortage of bed linens which caused him to go eight months without a sheet. Plaintiff has not alleged any injury from the denial of the bed linens, nor has he identified any defendant responsible for denying him the bed linens.

### k. Lack of Adequate Hygiene Products

Plaintiff alleges he was provided with soap and toothpaste, as an indigent prisoner, one time every two weeks. Plaintiff estimates he received one small bar of soap and one small tube of toothpaste, about 4 oz. Plaintiff has further maintained he suffered boils and staph infections, earaches, and toothaches, due to improper hygiene. "[R]epeated deprivation of hygiene supplies violates inmates' Eighth Amendment rights." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir.1996). Defendants have not addressed this issue in the Motion for Summary Judgment, and therefore a genuine issue of material fact exists.

### iii. Overcrowding

Plaintiff alleges that due to overcrowding, he was forced to eat some meals on the floor and that overcrowding also caused "animosity" between the inmates due to the lack of personal space.

However, Plaintiff has not alleged that he personally was forced to sleep on the floor, or that he was harmed by any other inmate due to the overcrowded conditions. While Plaintiff states that he was exposed to germs from eating on what he has described as an unsanitary floor, he has not established how he was harmed by the exposure to these germs, if at all. Accordingly, there is no material issue of fact regarding his claims.

**IV.    Conclusion**

Accordingly, the Motion for Summary Judgment, ECF No. 18, be **GRANTED in part and denied in part**. The Motion for Summary Judgment, ECF No. 18, is **denied** as to Plaintiff's conditions of confinement claims regarding a lack of hot water, unusable toilets, and lack of adequate hygiene products against Defendants Radley, Ansley, and Newton. The Motion for Summary Judgment is **granted** regarding Plaintiff's official capacity claims; claims against Defendants Sanders, Steed, and Dorris; and the following conditions of confinement claims: no access to drinking water; padlocks on the doors; continually running water; lack of TB lights; black mold; lack of adequate clothing; lack of adequate linens; and overcrowding.

**IT IS SO ORDERED** this **10th day of March 2011.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE